IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

J & J SPORTS PRODUCTIONS, INC.,

    Plaintiff,

v.

ZENAIDA BAUTISTA JUANILLO,
individually and d/b/a ZENS,

    Defendant.

No. C 10-01801 WHA

**ORDER GRANTING
DEFAULT JUDGMENT**

## INTRODUCTION

J & J Sports Productions, Inc. brings this action against defendant, Zenaida Bautista Juanillo. Plaintiff alleges that defendant unlawfully intercepted and broadcasted a boxing match for which plaintiff owned the exclusive television distribution rights. Plaintiff moves for default judgment against defendant. For the following reasons, the motion is **GRANTED**.

## STATEMENT

Plaintiff commenced this action on April 27, 2009. Proof of service was filed by plaintiff on July 9 (Dkt. No. 5). Defendant failed to answer the complaint by the required deadline and has not subsequently appeared. The clerk entered default judgment against defendant on July 30. Plaintiff seeks to recover damages for one of its federal causes of action under 47 U.S.C. 553 and its common law cause of action for conversion (Br. 2). Plaintiff's motion for default judgment also asserts the right to recover attorney's fees and costs within fourteen days of any order granting default judgment.

Plaintiff is a California company, which owned the exclusive nationwide television distribution rights to *"The Battle of East and West": Manny Pacquiao v. Ricky Hatton, IBO Light Welterweight Championship Fight Program*, telecast nationwide in May 2009. Defendant is the alleged owner and operator of Zens restaurant in San Leandro, California. Plaintiff's motion states that the location of the restaurant is Alameda and bases much of the analysis for damages on the population size of the city and surrounding area. Those arguments will not be considered in this order. The complaint, proof of service and declarations filed in support of the motion, however, state the restaurant is in San Leandro.

Plaintiff alleges that on the date of the nationwide telecast of the program, defendant, with willful knowledge that the program was not to be intercepted by an unauthorized entity, intercepted and displayed the program at its restaurant. The program included the main boxing match between Manny Pacquiao and Ricky Hatton. In order to broadcast the program, commercial establishments were required to enter into a subleasing agreement with plaintiff. The interstate transmission of the program was encrypted and was only made available to plaintiff's customers who had paid the licensing fees.

On May 2, 2009, investigator Gary Gravelyn observed the alleged unlawful exhibition of the program at the defendant's restaurant, which was described by him as a "Filipino Restaurant." In his declaration Gravelyn observed one projector and two LCDs and gave handwritten descriptions of their size and locations in the venue. Gravelyn states that he observed the boxing match between Manny Pacquiao and Ricky Hatton on display on the television sets. Specifically, Gravelyn stated he observed the "Beginning of round #1. Also during the round, I observed Pacquiao knocking Hatton to the mat" (Gravelyn Decl. 2).

Additionally in his report, Gravelyn circled that a cable box "was not visible" and that the establishment "does not" have a satellite dish. Defendant's restaurant was observed to have a 150-person capacity. At the time of Gravelyn's appearance he conducted two head counts: in the first he counted 101 people and in the second he counted 97 people in the restaurant. There was no required cover charge.

# ANALYSIS

Under FRCP 55 "when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." When deciding whether to grant a default judgment the following factors are considered: (1) the possibility of a dispute concerning material facts; (2) the merits of the plaintiff's substantive claims; (3) the sufficiency of the complaint; (4) the possibility of prejudice to the plaintiff; (5) the sum of money at stake in the action; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

### 1. MERITS OF THE SUBSTANTIVE CLAIMS AND SUFFICIENCY OF THE COMPLAINT.

All material facts, upon entry of default judgment, are undisputable. When default is entered, all well-pleaded facts in the complaint are taken as true, except those relating to damages. *Fair Housing of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). Thus, when the court clerk entered default against defendant, there remained no genuine dispute of material facts. The merits of plaintiff's substantive claims and the sufficiency of the complaint as related to damages are thus considered together.

#### A. Statutory Damages.

The Cable and Television Consumer Protection Act, 47 U.S.C. 553, "prohibits a person from intercepting or receiving or assisting in intercepting or receiving any communications service over a cable system." *J & J Sports Productions, Inc. v. Manzano*, 2008 WL 4542962, at *2 (N.D. Cal. 2008) (Whyte, J.). Damages for each violation are awarded at a minimum of $250 and a maximum of $10,000. 47 U.S.C. 553(c)(3)(A). In its calculation for damages plaintiff has not requested a specific amount and asks that discretion be given to "award statutory and enhanced damages to Plaintiff in an amount sufficient to compensate it and sufficient to serve as an effective general and specific deterrent in the future" (Br. 14). Technically, plaintiff has not determined the means of transmission, however from the investigator's declaration it is known that the establishment does not have a satellite dish and although a cable box was not

3

visible that would have been the most likely source of transmission. In light of the information presented, this order awards $500 in statutory damages under Section 553.

### B. Enhancement Damages.

In addition to the statutory damages plaintiff requests enhancement damages under 47 U.S.C. 553, which permits enhanced damages up to $50,000 if violations were committed "willfully and for the purpose of commercial advantage or private financial gain." Plaintiff asserts that enhancement damages would serve as a general and specific deterrent. This judgment orders $500 more than what the defendant would have had to pay for a proper license; this is a significant penalty for a first time violator that would likely promote general deterrence. The undersigned declines to award enhancement damages.

### C. Conversion.

A conversion claim has three elements: "ownership or right to possession of property, wrongful disposition of the property right and damages." *G.S. Rassmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc.*, 958 F.2d 896, 906 (9th Cir. 1992). Since plaintiff has purchased the licensing rights to the program at issue, these three elements are met. Plaintiff asserts that the amount requested with respect to conversion is the reasonable fee a commercial establishment would have had to pay to broadcast the program lawfully. Defendant's restaurant had a capacity of 150 people. According to an affidavit by J & J Sports' president, Joseph Gagliardi, the amount that a commercial establishment with a maximum occupancy of 150 people would have been required to pay for a subleasing agreement was $2,000 (Gagliardi Aff. ¶ 8). Accordingly, this order awards $2,000 for the conversion claim.

### 2. REMAINDER OF THE *EITEL* FACTORS.

The remaining factors to consider for default judgment are whether there is a possibility of prejudice to the plaintiff, the amount of money at stake, whether the default was due to excusable neglect, and whether the default serves the policy favoring decisions on the merits.

*First*, plaintiff would be prejudiced if default judgment was not entered because there would otherwise be no recourse for recovery. Plaintiff has attempted to enter into subleasing agreements with commercial establishments to exhibit the programs it has rights over, but it

4

seems, unfortunately so, that commercial establishments continue to illegally intercept programs free of charge. *Second*, the amount of money at stake is the combined award for statutory and conversion damages, totaling $2,500, based upon the record. This amount is not so excessive as to disfavor default judgment. *Third*, the default judgment cannot be due to excusable neglect. Where a defendant is served with a summons and complaint pursuant to FRCP 4, there cannot be a conclusion that the defendant's failure to answer was the result of excusable neglect. Plaintiff served a copy of the summons and complaint with the person in charge of defendant's establishment, "Angelita" (Dkt. No. 5). This order finds service to be adequate.

Finally, there is strong policy favoring decisions on the merits whenever reasonably possible. Defendant's failure to answer plaintiff's complaints, however, makes a decision on the merits impractical, if not impossible. Under FRCP 55(a), termination of a case before hearing the merits is proper when a defendant has failed to defend the action against it. Thus, the motion is **GRANTED**.

## CONCLUSION

Plaintiff's motion for default is **GRANTED**. Judgment will be entered in favor of plaintiff and against defendant in the amount of $2,500. Plaintiff has fourteen days to request the recovery of attorney's fees and costs.

**IT IS SO ORDERED.**

Dated: December 6, 2010.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE